# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **SILENT COMMUNICATION, LLC,**<br>**Plaintiff,** | § | |
| | § | |
| *v.* | § | **6:22-CV-00252-ADA** |
| | § | |
| **BLACKBERRY CORPORATION,**<br>**Defendant.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S <u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

Before the Court is Defendant BlackBerry Corporation's ("BlackBerry") Motion to Dismiss Plaintiff's Infringement Claims for Lack of Subject Matter Jurisdiction filed on October 21, 2022. ECF No. 29. Plaintiff filed its response on November 18, 2022, ECF No. 32, to which Defendants replied on January 18, 2023, ECF No. 40. With the Court's permission, Plaintiff filed a sur-reply. ECF No. 52. The Court held a hearing on Defendant's motion on February 14, 2023, and heard testimony from Plaintiff's corporate representative, Carlos Gorrichategui. ECF No. 49. At the hearing, the Court **GRANTED** Defendant's motion to dismiss. *Id.* This order memorializes the Court's ruling.

## I. BACKGROUND

Plaintiff filed this action against BlackBerry on March 8, 2022, alleging infringement of U.S. Patent No. 8,792,874 ("the asserted patent"). ECF No. 1. Plaintiff amended its complaint on June 13, 2022. ECF No. 12. The amended complaint states that Plaintiff Silent Communication, LLC is a "Texas Corporation with its principal place of business located in Travis County, Texas." *Id.* The Court will refer to Plaintiff Silent Communication, LLC as "Silent Texas." After answering Plaintiff's amended complaint, Defendant BlackBerry filed the present motion to dismiss under


Case 1:26-cv-00261-BBC Filed 10/27/26 Page 2 of 10 Document 24-3

Rule 12(b)(1), alleging that Plaintiff does not own the asserted patent. ECF No. 29 at 1. Defendant BlackBerry argues that publicly available records show that another entity owns the asserted patent. *Id.* This dispute involves two assignment agreements, which are discussed in more detail below.

**Illinois Assignment:** In one assignment agreement signed on May 10, 2020, Silent Communication, Ltd. ("Silent Ltd.") assigned the asserted patent to "Silent Communication LLC, an Illinois limited liability company." ECF No. 29-2. The Court will refer to this agreement as the "Illinois Assignment." The assignee of this agreement, Silent Communication LLC, an Illinois limited liability company, will be referred to as "Silent Illinois." The Illinois Agreement was filed with the USPTO on May 14, 2020, with a Patent Assignment Cover Sheet listing Silent Illinois as the receiving party. *Id.* The agreement was signed by Max Bluvband on behalf of Silent Ltd. *Id.* The parties agree that Silent Illinois has since dissolved. ECF No. 29 at 1; ECF No. 32 at 4.

**Texas Assignment**: In another assignment agreement that was produced by Plaintiff in its response to Defendant's motion, Silent Communication, Ltd. assigned the asserted patent to "Silent Communication LLC, a Texas limited liability company." ECF No. 32-3. The Court will refer to this agreement as the "Texas Assignment." The assignee of this agreement, Silent Communication LLC, a Texas limited liability company, will be referred to as "Silent Texas."[1] The Texas Assignment is also dated May 10, 2020. ECF No. 32-3. The Texas Assignment was also signed by Max Bluvband on behalf of Silent Ltd. *Id.* On October 3, 2021, a Patent Assignment Cover Sheet was submitted to the USPTO to correct the receiving party on the previous Patent Assignment Cover Sheet. ECF No. 29-4. The Patent Assignment Cover Sheet did not include the

[1] Defendant makes the argument that the entities "Silent Communications, LLC" in the original complaint, "Silent Communication, LLC" in the amended complaint, and "Silent Communication LLC" in the Texas Assignment are different entities. ECF No. 29 at 1. Because the Court grants this motion on other grounds, it assumes that these are all the same entity, which will be referred to as "Silent Texas."

Texas Assignment, but it purported that the assignment had been executed on May 10, 2020. *Id.* Plaintiff's corporate representative, Mr. Gorrichategui, testified that the Texas Assignment was created on or around October 7, 2021. ECF No. 51 at 17:12-18.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Motion and Burden

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a case for lack of subject-matter jurisdiction. "When a Rule 12(b)(1) motion to dismiss is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The burden of demonstrating standing falls to [Plaintiff], as '[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990)).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Th[at] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement," and the plaintiff, as "the party invoking federal jurisdiction[,] bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103−04 (1998) (footnote omitted). Regional circuit law governs standards for the "dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch.*

*Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021). Federal Circuit law governs an entity's constitutional standing in a patent infringement action. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). "[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018) (quotation marks omitted).

In the patent infringement context, the Federal Circuit has "recognized that those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." *Lone Star Silicon Innovations LLC v. Nayna Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). Where the plaintiff owns exclusionary right in the asserted patent and the plaintiff has alleged that the defendant infringes, the Federal Circuit has determined: "[I]t is clear that a court could redress an injury caused by that infringement. This is enough to confer standing at the pleadings stage." *Id.*

**B. Considerations of Matters Outside the Pleadings**

A motion to dismiss for want of subject matter jurisdiction can take the form of a facial attack on the complaint or a factual attack on the subject matter of the Court. "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends[,] and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. 1981). BlackBerry has made a "factual attack," and the Court must therefore resolve factual disputes relating to subject matter jurisdiction:

> If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

However, it is not appropriate at the motion-to-dismiss stage to consider the merits of the case. "When a challenge to jurisdiction is in fact directed only to the merits of a question of patent law, it is proper for the district court to accept jurisdiction under § 1338." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1265 (Fed. Cir. 1991).

## III. ANALYSIS

BlackBerry argues that Plaintiff cannot establish that it had standing to bring this lawsuit. ECF No. 40 at 1. BlackBerry argues that the Illinois Assignment transferred all of Silent Ltd.'s rights to the asserted patent to Silent Illinois on May 10, 2020. *Id.* at 8. Thus, because there is no evidence that Silent Illinois transferred its ownership of the asserted patent to Silent Ltd., Silent Ltd. could not have conveyed ownership of the asserted patent to Silent Texas by the Texas Assignment. *Id.* (citing *RAD Data Communications, Inc. v. Patton Electronics Co.*, 822 F. Supp. 351, 353 (S.D.N.Y. April 20, 1995) (explaining that if a purported assignor "had nothing to assign, the purported assignment from [assignor] to plaintiff of the [asserted] patent[] is a nullity").

In response, Plaintiff argues that both parties to the Illinois Assignment intended to transfer Silent Ltd.'s rights to the asserted patent to Silent Texas. ECF No. 52 at 6. Plaintiff argues that the Texas Assignment reformed the mutual mistake within the Illinois Assignment. *Id.* Plaintiff argues that Silent Texas and Silent Illinois "have the same name and are only identified separately based on the identification of the state in which they were respectively formed." *Id.* Plaintiff argues that the signatories to the Illinois Assignment made a mutual mistake by identifying Silent Illinois, rather than Silent Texas, in the agreement. *Id.* The only evidence Plaintiff provides of this mistake is a declaration and testimony from Plaintiff's corporate representative, Mr. Gorrichategui. ECF No. 52-1; ECF No. 51.

While Plaintiff argues that the evidence shows that there was a mutual mistake at the time of the execution of the Illinois Assignment, the Court disagrees. Mr. Gorrichategui testified that he and Mr. Bluvband, the CEO of Silent Ltd., decided that an LLC should be formed to enforce the asserted patent. ECF No. 51 at 11:6−12:2. At the time, Mr. Gorrichategui was working with a different law firm, which formed Silent Illinois. *Id.* at 13:2-5. But Mr. Gorrichategui testified that he began working with his current counsel and "[they] decided it was better to create a Texas entity." *Id.* at 13:21-22. Silent Texas was formed on March 30, 2021. *Id.* at 14:10-14. Mr. Gorrichategui explained that because it was always his and Mr. Bluvband's intention to assign the patent to the plaintiff of the entity that would enforce the asserted patent, they reformed the assignment agreement so that it purported to transfer ownership interest to Silent Texas rather than Silent Illinois. *Id.* at 15:15−16:1.

While Messrs. Gorrichategui and Bluvband may have intended to reform the agreement to transfer ownership interest to Silent Texas, this is not a reformation under Texas law.[2] Under Texas law, "[i]f a party can prove that a contract is the result of mutual mistake, it may be entitled to the equitable remedy of reformation." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 408 (5th Cir. 2012). "The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties." *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). "[R]eformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing." *Id.* The classic

[2] Generally, "[t]he assignment of a patent's legal title is interpreted in accordance with contract statutes and common law in the state where the assignment took place." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020). However, Plaintiff does not state where the Texas Assignment took place. Because Plaintiff relies on Texas law for its argument that the Texas Assignment is a reformation of the Illinois Assignment, the Court applies Texas law here.

example of a mutual mistake is a scrivener's error, such as mistakenly changing the middle initial of the name of the assignee. *Rocanville Corp. v. Nat. Gas Pipeline Co. of Am.*, 823 F.2d 92, 94 (5th Cir. 1987). Reformation is not appropriate where the "contract correctly reflect[s] the nature of the parties' agreement *at the time that the contract was signed*." *Id.*

Here, Plaintiff has failed to show that there was a mutual mistake in reducing the original agreement to writing. The Illinois Assignment correctly reflects the nature of the parties' agreement at the time that the contract was signed. Based on Mr. Gorrichategui's testimony, the parties agreed to transfer ownership of the asserted patent to a U.S.-based entity. ECF No. 51 at 12:17-24. The U.S.-based entity, Silent Illinois, was formed for this purpose. *Id.* at 12:25−13:5. The evidence provided by Plaintiff does not show that the parties mistakenly conveyed ownership to Silent Illinois when they intended to convey ownership to Silent Texas. In fact, Silent Texas did not exist at the time of the Illinois Assignment. ECF No. 29-6 (showing that Silent Texas formed on March, 30, 2021). Instead, the evidence shows that Messrs. Gorrichategui and Bluvband decided at a later date to form Silent Texas and to enforce the asserted patent through Silent Texas, rather than Silent Illinois. ECF No. 51 at 13:21-22. Therefore, the Court finds that the Illinois Assignment correctly reflects the nature of the parties' agreement at the time that the contract was signed. Reformation is not appropriate because no mutual mistake is contained within the Illinois Assignment.

Even if the Court assumes that the Texas Assignment is a reformation of the Illinois Assignment, an obstacle persists: Silent Texas did not exist at the time of the Illinois Assignment. Silent Texas was formed on March 30, 2021. ECF No. 29-6. The Illinois Assignment, which Plaintiff alleges mistakenly assigned Silent Ltd.'s rights in the asserted patent to Silent Illinois rather than Silent Texas, was executed on May 10, 2020. ECF No. 29-2. Thus, even if the Texas

Assignment reformed a mutual mistake within the Illinois Assignment, the assignment agreement would have failed to convey Silent Ltd.'s interest in the asserted patent. *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, *4 (E.D. Tex. June 4, 2012) (explaining that an assignment to an entity that did not exist at the time of the agreement is "void as a matter of law"); *Blackbird Tech LLC v. ELB Elecs., Inc.*, No. 15-056-RGA, 2020 WL 5409052, *2 (D. Del. Sept. 9, 2020) (concluding that an agreement was void because the entity that the agreement assigned the patent to did not exist).

If the Texas Assignment is not a reformation of the Illinois Assignment, it cannot convey ownership of the asserted patent to Silent Texas. Based on Mr. Gorrichategui testimony, the Illinois Assignment preceded the Texas Assignment. ECF No. 51 at 12:11-14 (stating that the Illinois Assignment was executed on May 2, 2020); ECF No. 51 at 17:12-18 (stating that the Texas Assignment was drafted on or around October 7, 2021). The Illinois Assignment conveyed Silent, Ltd.'s interest in the asserted patent to Silent Illinois. While the Texas Assignment purports to convey Silent Ltd.'s interest in the asserted patent to Silent Texas, Silent Ltd. had nothing to transfer at the time of the Texas Assignment. Silent Ltd.'s interest in the asserted patent was conveyed in its entirety to Silent Illinois in the Illinois Assignment. ECF No. 29-2. Plaintiff has not shown that Silent Illinois conveyed ownership back to Silent Ltd. before executing the Texas Assignment. With the evidence Plaintiff has provided, the Texas Assignment could not convey ownership of the asserted patent to Silent Texas.

The Court concludes that the Texas Assignment failed to convey ownership of the asserted patent to Plaintiff Silent Texas. Plaintiff has not shown that it possesses any rights to the asserted patent. Thus, Plaintiff lacks standing to sue because it cannot show that it suffers an injury. *See Lone Star Silicon Innovations LLC*, 925 F.3d at 1234 ("We have recognized that those who possess

'exclusionary rights' in a patent suffer an injury when their rights are infringed. . . . '[E]xclusionary rights' involve the ability to exclude others from practicing an invention."). Because the Court grants BlackBerry's motion to dismiss on the grounds that the Texas Assignment is not a reformation of the Illinois Assignment and the Texas Assignment itself did not convey ownership in the asserted patent, the Court does not reach the other grounds argued in BlackBerry's motion.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby **GRANTED**. Plaintiff's infringement claims are hereby dismissed with prejudice.

**SIGNED** this 19th day of May, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE